IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DION SPEARS, ) | |
|         Plaintiff, ) | |
| ) | |
|     vs. ) | Case No. 3:14 CV 811 RJD |
| ) | |
| DR. SHEARING, et al., ) | |
| ) | |
|         Defendants. ) | |

## MEMORANDUM AND OPINION

**DALY, Magistrate Judge:**

Before the Court is Defendant Robert Shearing's Motion for Summary Judgment (Doc. 55) and Defendants John Baldwin and Kimberly Butler's Motion for Summary Judgment (Doc. 67.) Plaintiff Dion Spears is an inmate with the Illinois Department of Corrections. Plaintiff sues Defendant Baldwin in his official capacity as the director of the Illinois Department of Corrections and Defendant Butler in her official capacity as the warden of Menard Correctional Center. Plaintiff also sues Defendant Robert Shearing, M.D., who was the medical director at Menard Correctional Center. On July 16, 2014, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) On July 14, 2015, the Court dismissed Defendant John Trost on summary judgment for failure to exhaust administrative remedies. (Doc. 40.) Plaintiff now proceeds on the following claims:

> **Count 1:** Defendant Shearing and Defendant Butler, in her official capacity as the warden of Menard Correctional Center, violated Plaintiff's right to receive medical care under the Eighth Amendment when they denied his requests for physical therapy, speech therapy, and a walker;

> **Count 3**: Defendant Baldwin, in his official capacity as the director of the Illinois Department of Corrections, violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA") and/or Rehabilitation Act, 29 U.S.C. §§ 794-94e, ("RA") by

failing to provide Plaintiff with speech therapy, physical therapy, a walker, and a low gallery/low bunk permit.

For the following reasons, the Defendants' Motions for Summary Judgment are GRANTED.

## I. BACKGROUND

On July 31, 2012, Plaintiff entered the custody of the Illinois Department of Corrections at Stateville Correctional Center. (Doc. 56-5 at 7.) On January 16, 2013, Plaintiff transferred to Menard Correctional Center. (*Id.*) From October 15, 2012, to November 16, 2013, Dr. Shearing served as the medical director at Menard Correctional Center. (Doc. 56-1 at 1.) Dr. Shearing is a physician with five years of neurological training. (*Id.*)

In February 2008, Plaintiff suffered injury to his head and brain stem due to a motor vehicle accident. (Doc. 56-5 at 5, 17.) In December 2009 and January 2010, Plaintiff underwent physical therapy during a four-week period while incarcerated at the Kane County Jail. (Doc. 56-4 at 36, 42.) In April and May 2010, Plaintiff further underwent four speech therapy sessions while incarcerated at the Kane County Jail. (*Id.* at 14-15, 38.)

On July 31, 2012, Plaintiff arrived at Stateville Correctional Center. On October 10, 2012, Plaintiff received approval for a one-time evaluation by a physical therapist for a home exercise program. (Doc. 56-2 at 4.) On December 6, 2012, Plaintiff underwent a physical therapy evaluation. (Doc. 56-2 at 6.) In the evaluation, the physical therapist indicated suspicions that Plaintiff did not give his full effort and that he magnified his systems. (*Id.*) The physical therapist further recommended against wheelchair use but stated that Plaintiff might benefit from physical therapy. (*Id.*) The record includes no other orders from any physician at Statesville Correctional Center for further physical therapy.

On January 16, 2013, Plaintiff arrived at Menard Correctional Center. On January 21, 2013, Dr. Shearing examined Plaintiff and observed mildly dysarthic speech and intact cranial nerves. (Doc. 56-2 at 11.) He evaluated Plaintiff's motor function but noted poor cooperation. (*Id.*) Dr. Shearing assessed status post closed head injury and approved a low bunk/low gallery pass but found no need for a walker or wheelchair. (*Id.*; Doc. 56-5 at 11.) On February 1, 2013, Dr. Shearing completed his review of Plaintiff's medical records and found no need for physical therapy. (Doc. 56-2 at 12.) He reasoned that Plaintiff would not regain further motor function given the four years that had passed since the initial injury. (Doc. 56-1 at 3.)

On April 19, 2013, Plaintiff met with Dr. Shearing and requested a front cuff/slow walk permit. (Doc. 56-2 at 13; Doc. 56-5 at 11.) Dr. Shearing issued a front cuff/slow walk permit and renewed the low bunk/low gallery pass. (*Id.*) On May 30, 2013, Dr. Shearing considered Plaintiff's request for physical therapy or for a transfer to Stateville Correctional Center. (Doc. 56-2 at 16.) Dr. Shearing reiterated his opinion that physical therapy would not help Plaintiff but noted that Plaintiff had no medical hold that would prevent a transfer to Stateville Correctional Center. (*Id.*)

On September 2, 2013, Plaintiff met with a nurse and requested an appointment with a physician for speech therapy and physical therapy referrals or a medical transfer. (Doc. 56-2 at 17.) On September 16, 2013, Plaintiff met with Dr. Shearing and requested a medical transfer to Stateville Correctional Center. (Doc. 56-2 at 19.) Dr. Shearing explained that, while the Department of Corrections did not provide medical transfers, Plaintiff had no medical hold that would prevent a transfer to Stateville Correctional Center. (*Id.*) On November 16, 2013, Dr. Shearing left his position as medical director at Menard Correctional Center. (Doc. 56-1 at 1.)

3

On July 28, 2013, Plaintiff filed a grievance requesting physical therapy and a transfer to a facility for treatment. (Doc. 68-4 at 2-3.) On November 17, 2013, the nursing supervisor reviewed the records and noted Dr. Shearing's opinion that Plaintiff would not benefit from physical therapy. (*Id.* at 4.) Defendant Butler, then-ADA coordinator, determined that Plaintiff did not have a disability under the ADA based on his limitations of mild speech impairment and slightly decreased mobility of his right arm and leg. (Doc. 68-2.)

On November 27, 2013, the grievance officer reported that Plaintiff's request for a transfer had been denied, that Dr. Shearing did not believe that Plaintiff would benefit from physical therapy, and that Defendant Butler determined that the request did not meet ADA standards. (Doc. 68-4 at 1.) The grievance officer recommended the denial of Plaintiff's grievance requests, and Richard Harrington, then-warden of Menard Correctional Center, concurred. (*Id.* at 1-2.)

On January 30, 2015, Plaintiff met with a nurse and requested an appointment with a physician for a transfer to a facility where he could receive speech therapy. (Doc. 56-2 at 24.) The nurse observed slightly slowed speech without slurring and noted that she could fully understand Plaintiff's speech. (*Id.*) On February 3, 2015, a physician noted that Plaintiff's requests for speech therapy and occupational therapy had been addressed previously and found no indication that Plaintiff required speech therapy and occupational therapy. (*Id.*)

Plaintiff is able to walk around the yard for exercise. (Doc. 68-1 at 73.) He is permitted to place his hand on other inmates' shoulders for support as he walks in lines. (*Id.*) He has not been denied access to any programs at Menard Correctional Center. (*Id.* at 73-74.) Prisoners in general population are not allowed to have canes, crutches, or walkers due to their potential use as weapons. (Doc. 68-2 at 2.)

4

## II.     ANALYSIS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment the court must view all facts and reasonable inferences in a light most favorable to the nonmoving party. *Sartor v. Spherion Corp.*, 388 F.3d 275, 278 (7th Cir. 2004). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

### A. Deliberate Indifference

Dr. Shearing and Defendant Butler argue that they are entitled to summary judgment on the claim of deliberate indifference because Dr. Shearing did not act with deliberate indifference towards Plaintiff's medical needs. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992).

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a

prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Whether an injury is serious enough is a very fact specific inquiry – seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

During Dr. Shearing's initial appointment with Plaintiff, he evaluated motor function, finding no need for a walker or wheelchair, but he provided a low bunk/low gallery pass. Subsequently, Dr. Shearing reviewed Plaintiff's medical records and found no need for physical therapy, reasoning that Plaintiff would not regain further motor function given the four years that had passed since the initial injury. Upon Plaintiff's request, Dr. Shearing also provided a slow walk/front cuff pass. Additionally, when Plaintiff asked for a medical transfer for physical therapy, Dr. Shearing responded that, while the Department of Corrections did not provide medical transfers, no medical holds prevented Plaintiff from applying for a transfer.

The evidence demonstrates that Dr. Shearing disagreed with Plaintiff regarding the need for physical therapy but did not act with deliberate indifference towards Plaintiff's condition. Moreover, although Plaintiff's grievance regarding physical therapy and a transfer was denied, the grievance officer nevertheless reviewed Plaintiff's medical records, consulted an ADA coordinator, submitted Plaintiff's request for a transfer, and prepared a written report before recommending denial.

Further, the evidence does not support Plaintiff's claim of deliberate indifference regarding the alleged need for speech therapy and a walker. The medical records detail only two occasions related to speech therapy during his time at Menard Correctional Center. First, on September 2, 2013, Plaintiff met with a nurse and requested an appointment with a physician for speech therapy and physical therapy referrals or a medical transfer. Plaintiff attended the appointment with Dr. Shearing, but the record does not show that Plaintiff raised the speech therapy issue. Next, in January 2015, when Plaintiff again requested an appointment with a physician for a speech therapy referral, a nurse observed only mild speech impairment, and the physician found no indication that Plaintiff required speech therapy. These medical records demonstrate neither a serious medical need nor deliberate indifference with regard to speech therapy. Similarly, the record does not reflect that Plaintiff raised his concerns regarding a walker or a cane to any physician or officer at Menard Correctional Center.

In sum, the record does not demonstrate that Dr. Shearing or Menard Correctional Center acted with deliberate difference towards Plaintiff's serious medical needs. Accordingly, Defendants' Motions for Summary Judgment are GRANTED with respect to Count I.

### B. Americans with Disabilities Act

Defendant Baldwin argues that he is entitled to summary judgment on the ADA/RA claim because Plaintiff is not an individual with a disability as defined by the ADA and because Plaintiff was not denied access to any program or activity. Plaintiff responds that his physical impairments substantially limited his major life activities and that he was denied access to medical services. (Doc. 76 at 6.) For ADA claims, plaintiffs must show that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of his disability. 42 U.S.C. § 12132. *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). The analysis under the RA is the same "except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

Denial of medical services on the basis of disability may constitute a violation of the ADA. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). However, Plaintiff's claim is not that he was denied access to any medical service on the basis of disability but that he did not receive proper treatment. "A claim for inadequate medical treatment is improper under the ADA." *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Moreover, the record contains no evidence that Plaintiff was denied any medical treatment because he was disabled.

In sum, the evidence does not show that Menard Correctional Center violated the ADA or RA by denying Plaintiff medical services on the basis of disability. Accordingly, Defendant Baldwin's Motion for Summary Judgment is GRANTED with respect to Count II.

### III.   CONCLUSION

Based on the foregoing, Defendants Robert Shearing, Kimberly Butler, and John Baldwin are entitled to summary judgment, and Defendants' Motions for Summary Judgment (Docs. 55, 67) are GRANTED. Defendants Robert Shearing, Kimberly Butler, and John Baldwin are DISMISSED with prejudice. The Clerk of Court is DIRECTED to enter judgment accordingly.

**SO ORDERED.**

**DATED:   October 26, 2016.**

*s/      Reona J. Daly*
**UNITED STATES MAGISTRATE JUDGE**